UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDSTEEL CONSTRUCTION LLC and WAVERLY IRON CORP., | Civ. Action No. cv- 25-3335 |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| vs. | |
| U.S. SMALL BUSINESS ADMINISTRATION and KELLY LOEFFLER as Administrator of the U.S. Small Business Administration, | |
| Defendants. | |

## <u>COMPLAINT</u>

Plaintiffs Medsteel Construction LLC ("Medsteel") and Waverly Iron Corp. ("Waverly Iron" and collectively with Medsteel, "Plaintiffs"), by their undersigned counsel and for their Complaint against defendants U.S. Small Business Administration and Kelly Loeffler as Administrator of the U.S. Small Business Administration (collectively, "Defendants" or the "SBA"), allege as follows:

## <u>INTRODUCTION</u>

1.     Plaintiffs seek a judgment declaring that: (a) the modifications to their respective Economic Injury Disaster Loans ("EIDL") were obtained through identity theft; and (b) there is no obligation to repay the increased amount of the loans procured through such fraudulent means.

## <u>PARTIES</u>

2.     Medsteel is a limited liability company organized and existing under the laws of the State of New York, with principal offices at 25 Commercial Boulevard, Medford, NY 11763.

1

3.      Waverly Iron is a business corporation organized and existing under the laws of the State of New York, with principal offices at 25 Commercial Boulevard, Medford, NY 11763.

4.      At all relevant times, non-party Thomas Franzone served as bookkeeper/controller for both Medsteel and Waverly Iron.

5.      Thomas Franzone died on June 6, 2022.

6.      The SBA is a cabinet-level federal agency that provides counseling, capital, contracting expertise and related services to small business owners and entrepreneurs.

7.      Kelly Loeffler is the Administrator of the U.S. Small Business Administration.

**JURISDICTION AND VENUE**

8.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under the Constitution, laws, or treaties of the United States, and/or pursuant to 28 U.S.C. § 1346, because this is a civil action or claim against the United States not exceeding $10,000 in amount or upon any express or implied contract with the United States.

9.      The Court also has subject matter jurisdiction under 28 U.S.C. § 2201 because Plaintiffs seek a declaration of rights and/or legal relations of interested parties.

10.     The SBA's enabling statute, 15 U.S.C. § 634(b)(1), waives the SBA's sovereign immunity as follows: "In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may-- (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property; …."

11. The EIDL program is codified in 15 U.S.C. § 636(b), which along with the (aforementioned) sue-and-be-sued clause (15 U.S.C. § 634(b)(1)), is part of Chapter 14A of Title 15 of the U.S. Code.

12. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and omissions giving rise to the claims herein occurred in this District.

13. In the alternative, venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(3), because the SBA is subject to personal jurisdiction in this District.

**FACTUAL BACKGROUND**

**The Medsteel Loan**

14. On or about May 28, 2020, Medsteel and the SBA duly entered into a written Loan Authorization and Agreement pursuant to which the SBA issued a EIDL to Medsteel in the amount of $150,000, which was assigned Loan Number 4484807808 (the "Medsteel Loan").

15. On or about August 4, 2021, and unbeknownst to Medsteel's owners and without Medsteel's requisite authorization, Thomas Franzone forged or fraudulently affixed the signatures of Medsteel's owners/officers Frank Niemann and Frank Pizzichemi onto an Amended Loan Authorization and Agreement in connection with Application Number 3301094832 (the "Medsteel Application"), which increased the Medsteel Loan from $150,000 to $500,000.[1]

16. The Medsteel Application was not authorized by Medsteel and was procured through identity theft, as Medsteel subsequently advised and demonstrated to the SBA.

17. In 2022, Medsteel submitted to the SBA various documents concerning the identity theft.

---

[1] The fraudulent conduct included accessing Frank Niemann and Frank Pizzichemi's Docu-Sign accounts and signing the amended Medsteel Loan documents via Docu-Sign.

18. By letter dated August 1, 2023, the SBA confirmed receipt of Medsteel's identity theft complaint, stated that the SBA was unable to validate such claim, and invited Medsteel to request reconsideration of that finding.

19. On or about February 1, 2024, Medsteel submitted to the SBA a detailed affidavit from its employee Frank Niemann, who explained therein that the modification of the Medsteel Loan was procured by the fraudulent conduct of Thomas Franzone and that Mr. Franzone used the resulting loan proceeds for his personal benefit.

20. A Declaration of Identity Theft signed by Medsteel's owner Frank Pizzichemi, a Federal Trade Commission Identity Theft Report, and Certifications of Identity were attached to the affidavit as Exhibit A.

21. The Declaration of Identity Theft stated that Thomas Franzone stole Frank Pizzichemi's identity, described how Mr. Pizzichemi learned about the identity theft, and confirmed that the Medsteel Application was not requested by Medsteel, was not authorized by Medsteel, and that Medsteel did not benefit therefrom.[2]

22. A Field Report filed by Medsteel with the Suffolk County (NY) Police Department concerning Thomas Franzone's fraudulent conduct, including forging the signature of Medsteel's owner, was attached to the affidavit as Exhibit B.

23. Medsteel retained KLG Business Valuation & Forensic Accountants, LLC (the "Forensic Accountant") to perform an analysis of Medsteel's bank accounts to determine whether Medsteel benefitted from Medsteel Loan proceeds that Thomas Franzone caused to be deposited into bank accounts maintained in Medsteel's name.

---

[2] The Application was attached to the affidavit as Exhibit C.

24. The Forensic Account's written analysis, dated February 1, 2024, was attached to the affidavit as Exhibit F.

25. According to the February 1, 2024 analysis, $350,000 (the amount of the Medsteel Loan modification) from the SBA was deposited into Medsteel's accounts and the entirety of such funds was withdrawn or utilized by Thomas Franzone and not for the benefit of Medsteel.

26. Furthermore, on April 7, 2025, Medsteel submitted to the SBA a more detailed analysis performed by the Forensic Accountant (the "Medsteel Forensic Analysis"), which determined that (a) from May 2020 through June 2022, an aggregate of $499,900 from the Medsteel Loan was deposited into Medsteel's accounts and (b) during that same period, an aggregate of $740,995 was withdrawn from those accounts for the benefit of Thomas Franzone (and not for the benefit of Medsteel).

27. The Medsteel Forensic Analysis includes detailed schedules as well as supporting bank records.

28. In a letter dated April 24, 2025, the SBA stated that it was unable to validate Medsteel's claim of identity theft because the "Loan funds [were] deposited into [an] account associated with" Medsteel and because it deemed Thomas Franzone's fraud as a "[d]ispute between parties known by or otherwise associated with" Medsteel.

29. In a May 29, 2025 email to Medsteel's counsel, the SBA wrote that it "received the forensic accountant's documents" and that "[a]n additional review was performed, and it was determined that the business received the COVID EIDL deposits and this is a dispute between the business, its owners and Mr. Franzone's estate."

30. In a letter dated June 3, 2025, the SBA reiterated that it was unable to validate Medsteel's claim of identity theft because the "Loan funds [were] deposited into [an] account

associated with" Medsteel and because it deemed Thomas Franzone's fraud as a "[d]ispute between parties known by or otherwise associated with" Medsteel.

31. In response to other applications for modifications of the Medsteel Loan (applications numbers 3325765687, 3325448421, 3301111362 and 3325765687), the SBA correctly refused to process those applications based upon Thomas Franzone's forgery.

32. Specifically, by letters dated January 12, 2023, the SBA told Medsteel that, based upon its review of Medsteel's complaint of identity theft, the SBA "stopped the processing or cancelled any disaster loan applications submitting using [the] personal information" of Medsteel's owner Anthony Pizzichemi.[3]

33. The SBA's rejection of those applications is inconsistent with its later determination that the Medsteel Application at issue herein is valid.

34. The SBA's determination ignored and accorded no weight to the Medsteel Forensic Analysis, which concluded that although the proceeds derived from the Medsteel Application were deposited into an account associated with Medsteel, Medsteel did not benefit or use any of the funds, and that Mr. Franzone dissipated the funds for his sole personal benefit.

35. Furthermore, the fact that Medsteel has a claim against Mr. Franzone's estate does not change the fact that Medsteel never authorized the Medsteel Application or benefited from any of the funds derived therefrom. Indeed, the SBA never verified the signatures on the Medsteel Application or performed any other due diligence to ensure the validity thereof.

36. The SBA's failure to validate Medsteel's claim of identity theft is arbitrary, capricious and/or contrary to law.

---

[3] Copies of the letters were attached as Exhibit E to the affidavit.

6

**The Waverly Iron Loan**

37.     On or about May 28, 2020, Waverly Iron and the SBA duly entered into a written Loan Authorization and Agreement pursuant to which the SBA issued a EIDL to Waverly Iron in the amount of $150,000, which was assigned Loan Number 4284537805 (the "Waverly Iron Loan").

38.     On or about July 20, 2021, November 1, 2021, March 21, 2022 and April 7, 2022, and unbeknownst to Waverly Iron's owners and without Waverly Iron's requisite authorization, Thomas Franzone forged or fraudulently affixed the signatures of Waverly Iron's owners/officers Frank Niemann and Frank Pizzichemi onto various Amended Loan Authorization and Agreements in connection with Application Number 3301074851 (the "Waverly Iron Applications"), which increased the Waverly Iron Loan from $150,000 to $500,000, then to $1,000,000, then to $1,531,400, and finally to $2,000,000.[4]

39.     The Waverly Iron Applications were not authorized by Waverly Iron and were procured through identity theft, as Waverly Iron subsequently advised and demonstrated to the SBA.

40.     Waverly Iron submitted to the SBA various documents concerning the identity theft.

41.     By letter dated October 29, 2024, the SBA confirmed receipt of Waverly Iron's identity theft complaint, stated that the SBA was unable to validate such claim, and invited Waverly Iron to request reconsideration of that finding.

42.     On or about April 15, 2025, Waverly Iron submitted to the SBA a detailed affidavit from its employee Frank Niemann, who explained therein that the modification of the Waverly

---

[4] The fraudulent conduct included accessing Anthony Pizzichemi and Frank Pizzichemi's Docu-Sign accounts and signing the amended Waverly Iron Loan documents via Docu-Sign.

Iron Loan was procured by the fraudulent conduct of Thomas Franzone and that Mr. Franzone used the resulting loan proceeds for his personal benefit.

43. A Declaration of Identity Theft signed by Waverly Iron's owner Frank Pizzichemi, a Federal Trade Commission Identity Theft Report, and Certifications of Identity were attached to the affidavit as Exhibit A.

44. The Declaration of Identity Theft stated that Thomas Franzone stole Frank Pizzichemi's identity, described how Mr. Pizzichemi learned about the identity theft, and confirmed that the Waverly Iron Application was not requested by Waverly Iron, was not authorized by Waverly Iron, and that Waverly Iron did not benefit therefrom.[5]

45. A Field Report filed by Waverly Iron with the Suffolk County (NY) Police Department concerning Thomas Franzone's fraudulent conduct, including forging the signature of Waverly Iron's owner, was attached as Exhibit B to the affidavit.

46. Waverly Iron retained the Forensic Accountant to perform an analysis of Waverly Iron's bank accounts to determine whether Waverly Iron benefitted from Waverly Iron Loan proceeds that Thomas Franzone caused to be deposited into bank accounts maintained in Waverly Iron's name.

47. Furthermore, on or about April 15, 2025, Waverly Iron submitted to the SBA a detailed analysis performed by the Forensic Accountant (the "Waverly Iron Forensic Analysis"), which determined that (a) from May 2020 through June 2022, an aggregate of $1,999,900 from the Waverly Iron Loan was deposited into Waverly Iron's accounts and (b) during that same period, an aggregate of $2,151,300.21 was withdrawn from those accounts for the benefit of Thomas Franzone (and not for the benefit of Waverly Iron).

---

[5] Various pages from the Applications were attached to the affidavit as Exhibit C.

48.     The Waverly Iron Forensic Analysis includes detailed schedules as well as supporting bank records.

49.     The Waverly Iron Forensic Analysis was attached to the affidavit as Exhibit G.

50.     Additionally, on April 15, 2025, Waverly Iron submitted to the SBA an affidavit of Anthony Pizzichemi (one of Waverly Iron's owners), who also confirmed that the modification of the Waverly Iron Loan was procured by the fraudulent conduct of Thomas Franzone and that Mr. Franzone used the resulting loan proceeds for his personal benefit.

51.     In a letter dated June 6, 2025, the SBA stated that it was unable to validate Waverly Iron's claim of identity theft because: (a) the "Loan funds [were] deposited into [an] account associated with" Waverly Iron; (b) it deemed Thomas Franzone's fraud as a "[d]ispute between parties known by or otherwise associated with" Waverly Iron; and (c) the email address on the Waverly Iron Application "matches the email address provided by [Waverly Iron] on the Declaration of Identity Theft."

52.     The SBA's rejection of the aforementioned applications (fraudulently submitted by Thomas Franzone on "behalf" of Medsteel) is inconsistent with its later determination that the Waverly Iron Applications at issue herein are valid.

53.     The SBA's determination ignored and accorded no weight to the Waverly Iron Forensic Analysis, which concluded that although the proceeds derived from the Waverly Iron Application were deposited into an account associated with Waverly Iron, Waverly Iron did not benefit or use any of the funds, and that Mr. Franzone dissipated the funds for his sole personal benefit.

54.     Furthermore, the fact that Waverly Iron has a claim against Mr. Franzone's estate does not change the fact that Waverly Iron never authorized the Waverly Iron Application or

benefited from any of the funds derived therefrom. Indeed, the SBA never verified the signatures on the Waverly Iron Application or performed any other due diligence to ensure the validity thereof.

55. The SBA's failure to validate Waverly Iron's claim of identity theft is arbitrary, capricious and/or contrary to law.

## FIRST CAUSE OF ACTION
### (Declaratory Relief for Medsteel)

56. Plaintiffs repeat and incorporate by reference paragraphs 1 through 55 above as if fully set forth and realleged herein.

57. An actual controversy concerning the Medsteel Loan exists between Medsteel and the SBA.

58. The SBA's failure to validate Medsteel's claim of identity theft is arbitrary, capricious and/or contrary to law.

59. Medsteel has no adequate remedy at law.

60. Accordingly, Medsteel is entitled to a declaration, pursuant to 28 U.S.C. §§ 2201 and/or 2202, that (i) the modification to the Medsteel Loan was obtained through identity theft; and (b) there is no obligation to repay the increased amount of the Medsteel Loan.

## SECOND CAUSE OF ACTION
### (Declaratory Relief for Waverly Iron)

61. Plaintiffs repeat and incorporate by reference paragraphs 1 through 60 above as if fully set forth and realleged herein.

62. An actual controversy concerning the Waverly Iron Loan exists between Waverly Iron and the SBA.

63. The SBA's failure to validate Waverly Iron's claim of identity theft is arbitrary, capricious and/or contrary to law.

64. Waverly Iron has no adequate remedy at law.

65. Accordingly, Waverly Iron is entitled to a declaration, pursuant to 28 U.S.C. §§ 2201 and/or 2202, that (i) the modification to the Waverly Iron Loan was obtained through identity theft; and (b) there is no obligation to repay the increased amount of the Waverly Iron Loan.

**WHEREFORE**, Plaintiffs pray for judgment in favor of Plaintiffs and against the SBA, as follows:

A. on the First Cause of Action for declaratory relief, and pursuant to 28 U.S.C. §§ 2201 and/or 2202, a declaration that (i) the modification to the Medsteel Loan was obtained through identity theft; and (b) there is no obligation to repay the increased amount of the Medsteel Loan;

B. on the Second Cause of Action for declaratory relief, and pursuant to 28 U.S.C. §§ 2201 and/or 2202, a declaration that (i) the modification to the Waverly Iron Loan was obtained through identity theft; and (b) there is no obligation to repay the increased amount of the Waverly Iron Loan; and

C. granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York  
      June 13, 2025

**MEISTER SEELIG & FEIN PLLC**

By: /s/ Kevin Fritz\_\_\_\_\_  
    Kevin Fritz  
125 Park Avenue, 7th Floor  
New York, New York 10017  
Tel: (212) 655-3500  
E-mail: kaf@msf-law.com  
*Attorneys for Plaintiffs*